UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIQUE MERRIMAN,<br><br>Plaintiff,<br><br>v.<br><br>J. LIZARRAGA, et al.,<br><br>Defendants. | No. 2:17-cv-1701 MCE KJN P<br><br><br><br>ORDER |

I. Introduction

    Plaintiff is a state prisoner, proceeding without counsel. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

    Plaintiff submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

    Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated to make monthly

payments of twenty percent of the preceding month's income credited to plaintiff's trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

II. Screening Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin v. Murphy, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal quotations marks omitted). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

III. Plaintiff's Amended Complaint

On August 23, 2017, plaintiff filed an amended complaint as of right. Fed. R. Civ. P. 15. In his 42 page amended complaint, plaintiff names 183 defendants, including doe defendants, and alleges 32 different causes of action alleging constitutional violations arising from various incidents at Mule Creek State Prison ("MCSP"), as well as incidents that occurred while he was housed at the Amador County Jail.

IV. Discussion

The court has reviewed the complaint pursuant to § 1915A and finds it must be dismissed with leave to amend because the claims asserted in the complaint are not properly joined under Federal Rule of Civil Procedure 20(a) concerning joinder of claims and defendants. Rule 20(a) provides that all persons may be joined in one action as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

Here, some of the acts or omissions giving rise to plaintiff's claims happened at two different institutions, and the rest of the claims were not part of the same transaction, occurrence or series of transactions or occurrences. Because plaintiff has alleged myriad unrelated claims against myriad unrelated defendants, the complaint must be dismissed. These claims are dismissed because they do not (a) arise out of the same transaction, occurrence, or series of transactions or occurrences and (b) present questions of law or fact common to all defendants. The dismissal of the improperly joined claims and parties means only that they cannot be pursued in this one action. Plaintiff is free to file a new action as to the claims he chooses not to pursue in

this action. In other words, plaintiff may only pursue related claims in this action; unrelated claims must be filed in separate actions.

### A. Potential Causes of Action

It appears that plaintiff may be able to state cognizable civil rights claims. The following legal standards may apply to such intended claims for relief.

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Although supervisory government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior, Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009), they may be individually liable under Section 1983 if there exists "either (1) [the supervisor's] personal involvement in the constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989). The requisite causal connection between a supervisor's wrongful conduct and the violation of the prisoner's constitutional rights can be established in a number of ways, including by demonstrating that a supervisor's own culpable action or inaction in the supervision or control of his subordinates was a cause of plaintiff's

4

injury.  Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011); Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991).  A plaintiff must also show that the supervisor had the requisite state of mind to establish liability, which turns on the requirement of the particular claim -- and, more specifically, on the state of mind required by the particular claim -- not on a generally applicable concept of supervisory liability.  Oregon State University Student Alliance v. Ray, 699 F.3d 1053, 1071 (9th Cir. 2012).

          1.  Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320).  In order to prevail on a claim of cruel and unusual punishment, however, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur.  Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

If a prisoner's Eighth Amendment claim arises in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106.  An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin, 974

F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would

////

provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

### 2. First Amendment Retaliation

To state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). Conduct protected by the First Amendment includes communications that are "part of the grievance process." Brodheim v. Cry, 584 F.3d 1262, 1271 n.4 (9th Cir. 2009). If plaintiff intends to assert a retaliation claim, he must specifically identify his protected conduct at issue, name the defendant who took adverse action against him, and plead facts demonstrating that the allegedly adverse action was taken "because of" plaintiff's protected conduct.

### 3. Fourteenth Amendment Due Process

Plaintiff raises multiple claims that his constitutional rights were violated because he was treated despite his refusal to be medically treated. A "competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." Cruzan by Cruzan v. Dir., Mo. Dept. of Health, 497 U.S. 261, 278 (1990). In order to determine whether plaintiff's right to refuse treatment was violated, courts must balance plaintiff's "liberty interests against the relevant state interests." Cruzan, 497 U.S. at 279. Specifically, courts must consider "the need for the government action in question, the relationship between the need and the action, the extent of harm inflicted, and whether the action was taken in good faith or for the purpose of causing harm." Plumeau v. Sch. Dist. No. 40, 130 F.3d 432, 438 (9th Cir. 1997) (quotation omitted); see

also Jacobson v. Massachusetts, 197 U.S. 11, 24-30 (1905) (Court balanced an individual's liberty interest in declining an unwanted smallpox vaccine against the State's interest in preventing the disease). So long as plaintiff can show that he posed no risk to himself or others when he refused to accept treatment, he can make out a cognizable claim. See Haas v. County of El Dorado, 2012 WL 1414115 (E.D. Cal. April 23, 2012) (court found that plaintiff who refused to be taken to the hospital after collapsing at preschool posed no risk to coworkers and schoolchildren).

In the prison context, "'[p]rison administrators have not only an interest in ensuring the safety of prison staff and administrative personnel . . . but also the duty to take reasonable measures for the prisoners' own safety." Washington v. Harper, 494 U.S. 210, 223 (1990) (citing Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). Where the treatment was for a mental illness, "given the requirements of the prison environment, the Due Process Clause permits the state to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will" so long as "the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest" and this determination has been made by medical personnel under "fair procedural mechanisms." Washington, 494 U.S. at 227-32. In such situations, to comport with due process, the government must show both the need for and appropriateness of the unwanted treatment. Riggins v. Nevada, 504 U.S. 127, 135 (1992).

On the other hand, "[w]hile it is clearly within [plaintiff's] rights to refuse medical treatment, he has no right to refuse treatment and then claim deliberate indifference to his medical condition." McNeil v. Singh, 2013 WL 1876127, at *19 n.59 (May 3, 2013) (where plaintiff had declined surgery on at least two occasions and refused medication "because he felt that it was improper or medically harmful").

B. Fourth Amendment: Strip Searches

It is unclear whether plaintiff can state a cognizable Fourth Amendment claim. For purposes of the Fourth Amendment, searches of prisoners must be reasonable to be constitutional. Nunez v. Duncan, 591 F.3d 1217, 1227 (9th Cir. 2010). Strip searches that are excessive, vindictive, harassing, or unrelated to any legitimate penological interest are not reasonable.

8

Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. (citing Bell v. Wolfish, 441 U.S. 520, 559 (1979)).

Unclothed visual body cavity searches in prison are almost always "reasonably related to legitimate penological interests" in discovering hidden weapons and contraband. See Michenfelder, 860 F.2d at 336. For example, in Bell, 441 U.S. 520 (1979), the Supreme Court allowed a prison to require inmates "to expose their body cavities for visual inspection as a part of a strip search conducted after every contact visit with a person from outside the institution" because prisons are "fraught with security dangers." See id. at 558-60. Florence v. Bd. of Chosen Freeholders, 132 S. Ct. 1510 (2012), allowed a jail to require arrestees headed to the jail's general population "to remove their clothing" and then "lift [their] genitals, turn around, and cough in a squatting position." Id. at 1513-14. The Court had no problem that the searches occurred "regardless of the circumstances of the arrest, the suspected offense, or the detainee's behavior, demeanor, or criminal history." Id. at 1514. And, in Michenfelder, 860 F.2d at 328, the Ninth Circuit allowed prison officials to conduct strip searches "every time" an inmate left or returned from the high-security unit housing inmate cells, or moved within the unit under escort. Id. at 329-30; see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (visual body cavity search was reasonable). It also held that "exposing unclothed male inmates" to female guards posed no constitutional problem. Michenfelder, 860 F.2d at 329-30; 334.

In addition, "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Hudson v. Palmer, 468 U.S. at 526 ("society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell.")

////

////

9

### C. Claims Not Cognizable

Finally, as discussed below, it appears that plaintiff cannot state a cognizable claim based on some of the allegations as pled in his amended complaint.

#### 1. Verbal Harassment

Plaintiff raises multiple claims that various defendants verbally harassed plaintiff. Allegations of harassment, embarrassment, and defamation are not cognizable under section 1983. Rutledge v. Arizona Bd. of Regents, 660 F.2d 1345, 1353 (9th Cir.1981), aff'd sub nom. Kush v. Rutledge, 460 U.S. 719 (1983); see also Franklin v. Oregon, 662 F.2d at 1344 (allegations of harassment with regards to medical problems not cognizable); Ellingburg v. Lucas, 518 F.2d 1196, 1197 (8th Cir. 1975) (Arkansas state prisoner does not have cause of action under § 1983 for being called obscene name by prison employee); Batton v. North Carolina, 501 F.Supp. 1173, 1180 (E.D. N.C. 1980) (mere verbal abuse by prison officials does not state claim under § 1983). Nor are allegations of mere threats cognizable. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (mere threat does not constitute constitutional wrong, nor do allegations that naked threat was for purpose of denying access to courts compel contrary result).

#### 2. Deprivation of Property

Plaintiff's claims based on the alleged deprivation of his personal property, including his television cord, earphones, mail, and other personal property, are not cognizable. The Ninth Circuit has held that "a negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy." Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994). California provides such a remedy. Id. (citing Cal. Gov't Code §§ 810-895).

#### 3. Transfers

Plaintiff alleges he was unlawfully transferred. Inmates do not have a constitutional right to be housed at a particular facility or institution or to be transferred, or not transferred, from one facility or institution to another. Olim v. Wakinekona, 461 U.S. 238, 244-48 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam). Nor does an inmate have a constitutional right to any particular classification. Moody v.

Daggett, 429 U.S. 78, 88 n.9 (1976); Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987). Alleged deprivations of rights arising from prison officials' housing and classification decisions do not give rise to a federal constitutional claim encompassed by the Fourteenth Amendment. Board of Regents v. Roth, 408 U.S. 564, 569 (1972).

### 4. Eighth Amendment: Conditions of Confinement

Plaintiff's claims concerning one incident where pepper spray contaminated his food, depriving him of one meal, and another incident where he could not eat all of his food for three days due to a dental extraction, are insufficient to state a cognizable civil rights claim. "The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). However, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. at 9.

Prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Farmer, 511 U.S. at 847. The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837. Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 835. Deliberate indifference is the reckless disregard of a substantial risk of serious harm. See Farmer, 511 U.S. at 836. Mere negligence is insufficient to establish deliberate indifference since "Eighth Amendment liability requires 'more than ordinary lack of due care for

////

11

the prisoner's interests or safety.'" Id., 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319). The defendant's conduct must have been wanton. Farmer, 511 U.S. at 835; Frost, 152 F.3d at 1128.

                    5. Administrative Segregation Placement

Plaintiff claims he was unlawfully detained in administrative segregation on July 1, 2017, and other dates. However, a prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986). As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983. Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir. 1984). If plaintiff chooses to challenge a rules violation report on due process grounds, he must file a separate action for each hearing he challenges.

V. Leave to Amend

Therefore, plaintiff's amended complaint is dismissed. The court, however, grants leave to file a second amended complaint in which plaintiff may raise only related claims. Plaintiff must raise unrelated claims in separate civil rights actions.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions about which he complains resulted in a deprivation of plaintiff's constitutional rights. Rizzo v. Goode, 423 U.S. 362, 371 (1976). Also, the complaint must allege in specific terms how each named defendant is involved. Id. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; May, 633 F.2d at 167; Johnson v. Duffy, 588 F.2d at 743. Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

////

////

////

////

Plaintiff may not change the nature of this suit by alleging new, unrelated claims.[1]  See Fed. R. Civ. P. 20(a)(2).

By signing a second amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others.  Fed. R. Civ. P. 11.

A prisoner may bring no § 1983 action until he has exhausted such administrative remedies as are available to him.  42 U.S.C. § 1997e(a) (also known as the Prison Litigation Reform Act ("PLRA")).  Proper exhaustion is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "demands compliance with an agency's deadlines and other critical procedural rules[,]" Woodford v. Ngo, 548 U.S. 81, 90 (2006).  The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement.  See Booth, 532 U.S. at 741 n.6.  Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal.  See Woodford, 548 U.S. at 90-93.  "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [] - rules that are defined not by the PLRA, but by the prison [or jail] grievance process itself."  Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88).

In Draper v. Rosario, 836 F.3d 1072, 1077 (9th Cir. 2016), the Ninth Circuit explained California's grievance procedures for inmates:

---

[1] As discussed above, plaintiff may properly assert multiple claims against a single defendant. Fed. Rule Civ. P. 18.  In addition, a plaintiff may join multiple defendants in one action where "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).  Unrelated claims against different defendants must be pursued in separate lawsuits.  See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).  This rule is intended "not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees -- for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)."  George, 507 F.3d at 607.  Similarly, claims based on incidents that occurred at different prisons or jails should be raised in separate actions.

> [A] prisoner may administratively appeal 'any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare.' Cal. Code Regs. tit. 15, § 3084.1. There is one informal level and three formal levels of review, although lower levels of review may be bypassed by administrators. To satisfy the exhaustion requirement of the PLRA, 42 U.S.C. § 1997e(a), a prisoner is generally required to appeal the grievance and receive a decision at the third level of review. Cal. Code Regs. tit. 15, § 3084.1(b).

Draper, 836 F.3d at 1077.[2]

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's second amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement exists because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files a second amended complaint, the original and amended pleading no longer serve any function in the case. Therefore, in a second amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. §1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's amended complaint is dismissed.

////

---

[2] In addressing exhaustion as to some of his claims, plaintiff alleges "special circumstances," and claims MCSP would not allow plaintiff to file any more administrative grievances. (ECF No. 4 at 33-36.) Plaintiff is cautioned that if he exceeded the limit on grievances, he may not be excused from the exhaustion requirement. See Williams v. Washington, 2008 WL 2078124, *4 (W.D. Wash., Feb. 21, 2008) (prisoner whose grievance was rejected because he was not allowed to have more than five grievances "active" at one time, and who did not withdraw a grievance so he could file the new one, failed to exhaust his administrative grievances), report and recommendation adopted, 2008 WL 516547, *2 (W.D. Wash., May 14, 2008); see also Cal. Code Regs. tit. 15, § 3084.4 (regulation governing appeal system abuse).

4. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

    a. The completed Notice of Amendment; and

    b. An original and one copy of the Second Amended Complaint.

Plaintiff's amended complaint shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The second amended complaint must also bear the docket number assigned to this case and must be labeled "Second Amended Complaint."

Failure to file a second amended complaint in accordance with this order will result in the dismissal of this action.

5. The Clerk of the Court is directed to send plaintiff two forms for filing a civil rights complaint by a prisoner, and one application to proceed in forma pauperis by a prisoner.

Dated: September 28, 2017

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/merri1701.14

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIQUE MERRIMAN,<br><br>      Plaintiff,<br><br>  v.<br><br>J. LIZARRAGA, et al.,<br><br>      Defendants. | No. 2:17-cv-1701 MCE KJN P<br><br>NOTICE OF AMENDMENT |

     Plaintiff hereby submits the following document in compliance with the court's order filed_____.

_____          Amended Complaint
DATED:

                                       _____
                                       Plaintiff